IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COMMERCIAL RESINS COMPANY, INC., <br><br> Plaintiff <br><br> v. <br><br> ADAMS INDUSTRIES, INC., ADAMS WAREHOUSING, LLC, ADAMS LOGISTICS, LLC, ADAMS & SONS TRUCKING, INC., ADAMS TRUCKING, INC., DONALD AND REBECCA ADAMS TRUST, SIDNEY WAREHOUSING, LLC, DONALD ADAMS, RONALD CARLSON, JR. AND CHRISTINE CARLSON, <br><br> Defendants. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

For its Complaint against Adams Industries, Inc., Adams Warehousing, LLC, Adams Logistics, LLC, Adams & Sons Trucking, Inc., Adams Trucking, Inc., Donald and Rebecca Adams Trust, Sidney Warehousing, LLC, and Donald Adams (collectively "Adams"), as well as against Ronald Carlson, Jr. and Christine Carlson (collectively the "Carlsons"), Plaintiff Commercial Resins Company, Inc. ("CRC") states as follows:

**JURISDICTION AND VENUE**

1. CRC is an Oklahoma corporation with its principle place of business in Colorado.

2. Defendant Adams Industries, Inc. is a Nebraska corporation whose principal place of business is Sidney, Nebraska.

3. Defendant Adams Warehousing, LLC is a Nebraska limited liability company whose principal place of business is Sidney, Nebraska. No member of Adams Warehousing is a citizen of Oklahoma or Colorado.

4. Defendant Adams Logistics, LLC is a Nebraska limited liability company whose principal place of business is Sidney, Nebraska. No member of Adams Logistics is a citizen of Oklahoma or Colorado.

5. Defendant Adams & Sons Trucking, Inc. is, upon information and belief, a Nebraska corporation whose principal place of business is Sidney, Nebraska.

6. Defendant Adams Trucking, Inc. is a Nebraska corporation whose principal place of business is Sidney, Nebraska.

7. Defendant Sidney Warehousing, LLC is a Nebraska limited liability company whose principal place of business is Sidney, Nebraska. Upon information and belief, no member of Sidney Warehousing is a citizen of Oklahoma or Colorado.

8. Upon information and belief, Defendant Donald and Rebecca Adams Trust is a trust whose citizenship, for diversity purposes, is Nebraska.

9. Defendant Donald Adams is an individual Nebraska citizen. Upon information and belief, Mr. Adams was at all relevant times the principal of all of the above-listed entities, and he controlled their actions.

10. Defendant Ronald Carlson Jr is an individual Arkansas citizen.

11. Defendant Christine Carlson is an individual Arkansas citizen.

12. There is complete diversity among the parties and the amount in controversy in this case exceeds $75,000. Thus, jurisdiction is proper in this Court pursuant to 28 USC § 1332.

13. This court has personal jurisdiction over all the Defendants because, *inter alia*, a substantial portion of the events giving rise to the claim occurred in this judicial district.

14. Venue is proper in this Court pursuant to 28 USC § 1391.

## **ADAMS' CO-OWNERSHIP WITH CRC OF IDS**

15. From 2010 to 2016, Adams and CRC were co-owners of a company called Innovative Distribution Services, LLC ("IDS").

16. On paper Adams and CRC each owned 50% of IDS. However, as set forth below, CRC put in both substantially more money and more work into IDS.

17. CRC put more than $4.7 million into IDS. It received back from its investment a total of $2.45 million in distributions. CRC's investment in IDS resulted in more than $2 million in losses to CRC.

18. In contrast, Adams put into IDS significantly less money than CRC. But Adams received out of IDS more than $16 million.

19. IDS was a multimillion windfall to Adams and a multimillion loss to CRC.

20. To be clear, this was not a situation of "sweat equity" versus capital. CRC employees, at CRC cost, performed substantially more services for IDS than did Adams and/or its employees and affiliates.

21. As a result of the significant difference in the amount of the investments CRC and Adams put in to IDS in both money and sweat equity, CRC should have held a larger share of IDS than Adams, entitling it to a larger proportionate share of IDS's profits than Adams. Instead, the two were made 50/50 partners. And, despite the fact that on paper the two were 50/50 partners, Adams received approximately 88% of the profit.

22. According to the IDS operating agreement, Sidney Warehousing was the only Adams entity that was CRC's partner in IDS. Despite this, the more than $16 million to Adams out of IDS was sent out, in various amounts, to other Adams entities.

23. Because CRC and Adams were 50/50 partners in IDS, distributions to the two companies should have been the same.

24. Furthermore, the monies paid from IDS to Adams were not legitimate fees paid for services rendered. Indeed, the notion that a partner would provide services to its company at rates that would cause the company to fail as a business (and require the other partners to pump millions of dollars into the company) is nonsensical on its face.

25. Beyond all this, in 2016, IDS was sold with Adams receiving 100% of the sale money for itself, and CRC never received any.

26. During this time, Defendant Ronald Carlson Jr. was CRC's president and CEO, and Defendant Christine Carlson was its CFO.

27. Upon information and belief, Donald Adams, Ronald Carlson Jr., and Christine Carlson created IDS as a means to illegitimately funnel money from CRC to Adams.

28. Upon information and belief, after the CRC money was funneled to Adams, some portion of the money was then returned to Ronald Carlson Jr. and Christine Carlson.

## OTHER MONEY TO ADAMS

29. Beyond the IDS scheme, Adams billed to CRC directly, and CRC paid, millions of dollars in illegitimate invoices.

30. Specifically, from 2010 to 2019, Adams billed, and CRC paid to Adams, more than $3.75 million.

31. Of the $3.75 million, only $1.24 million (which was rent associated with one of CRC's plants for which Adams was CRC's landlord) was legitimate. The remainder of the money was overbilling and overpayment.

## COUNT I: BREACH OF FIDUCIARY DUTY—ALL DEFENDANTS (DIRECT)

32. CRC incorporates the foregoing as if fully set forth here.

33. Adams owed CRC fiduciary duties in connection with IDS.

34. The Carlsons owed fiduciary duties to CRC as a result of the offices they held at CRC.

35. Defendants breached their duties by, *inter alia*:

    a. Directing CRC to contribute money to IDS.

    b. Directing to Adams/taking more than Adams' proportionate share of distributions from IDS.

    c. Not directing appropriate IDS distributions to be paid to CRC.

36. CRC suffered damages as a result of Defendants' various breaches.

## COUNT II: BREACH OF FIDUCIARY DUTY—ALL DEFENDANTS (DERIVATIVE)

37. CRC incorporates the foregoing as if fully set forth here.

38. To the extent the allegations in the preceding Count I state a derivative claim properly brought on behalf of IDS, rather than CRC directly, CRC brings the claim derivatively, on behalf of IDS.

## COUNT III: BREACH OF OPERATING AGREEMENT--ADAMS

39. CRC incorporates the foregoing as if fully set forth here.

40. CRC and Adams entered the IDS Operating Agreement.

41. The IDS Operating Agreement set forth the rights and obligations of CRC and Adams.

42. CRC performed all of its obligations under the IDS Operating Agreement.

43. Adams breached the Operating Agreement by taking monies to which it was not entitled, and not paying to CRC money to which it was entitled, as set forth above.

44. CRC was damaged by the breach.

## COUNT IV: UNJUST ENRICHMENT—ALL DEFENDANTS

45. CRC incorporates the foregoing as if fully set forth here.

46. By taking monies to which CRC was entitled, Defendants were unjustly enriched to CRC's detriment.

47. In justice and fairness, the money should be repaid to CRC.

## COUNT V: MONEY HAD AND RECEIVED—ALL DEFENDANTS

48. CRC incorporates the foregoing as if fully set forth here.

49. Defendants have received money belonging to CRC.

50. Defendants benefited and continue to benefit from having the money.

51. In equity and good conscience, the money should be returned to CRC.

## COUNT VI: FRAUD AND CONSTRUCTIVE FRAUD--ADAMS

52. CRC incorporates the foregoing as if fully set forth here.

53. Adams represented to CRC that it was putting more money/sweat into IDS than it in fact was. And Adams withheld from CRC the amounts it was taking out of IDS, as well as how little it was doing for the benefit of IDS.

54. CRC reasonably relied on Adams' representations and fraudulent withholding by continuing to put money into IDS and also by not taking more money out of IDS.

55. Furthermore, when Adams invoiced CRC, it was representing to CRC that the amounts on the invoice were legitimate charges CRC should pay. These representations were false, and CRC reasonably relied on the invoices by paying.

56. Adams knew all these representations were false when made and/or made recklessly without knowledge of their truth, and intended that CRC would rely on them.

57. CRC reasonably did so rely and was damaged as a result of its reliance.

## COUNT VII: BREACH OF CONTRACT--ADAMS

58. CRC incorporates the foregoing as if fully set forth here.

59. Adams breached any and all agreements between it and CRC by billing CRC for amounts not covered by any contract between Adams and CRC.

60. CRC performed all of its obligations under any and all agreements between it and Adams.

61. CRC was damages by Adams' breach because it paid the invoices.

## COUNT VIII: CIVIL CONSPIRACY—ALL DEFENDANTS

62. CRC incorporates the foregoing as if fully set forth here.

63. The entire IDS scheme was an agreement by and among all Defendants for the unlawful purpose of taking money out of CRC and/or depriving CRC of money it was owed—a conspiracy.

64. CRC was damaged by the conspiracy.

65. Defendants should all be held jointly and severally liable for CRC's damages in connection with IDS.

## COUNT IX: ACCOUNTING—ALL DEFENDANTS

66. CRC incorporates the foregoing as if fully set forth here.

67. As a matter of law and equity, Defendants should be required to account to CRC for all monies into and out of IDS, and Adams should be required to account to CRC for all amounts Adams received from CRC directly.

WHEREFORE, Plaintiff Commercial Resins Company, Inc. demands judgment against Defendants in its favor, for damages in an amount to be determined at trial, together with its costs

and disbursements, reasonable attorneys' fees, prejudgment interest, and such other and further relief as this Court deems just, equitable, and proper.

**JURY TRIAL DEMAND**

Date: January 21, 2022.

Respectfully submitted,

COMMERCIAL RESINS COMPANY, INC.

*/s/ Maggie L. Ebert*
Todd C. Kinney, #21960
Maggie L. Ebert, #24394
KUTAK ROCK LLP
The Omaha Building
1650 Farnam St.
Omaha, NE 68102
Phone: (402) 346-6000
Fax: (402) 346-1148
todd.kinney@kutakrock.com
maggie.ebert@kutakrock.com

*ATTORNEYS FOR COMMERCIAL RESINS COMPANY, INC.*